**UNITED STATES DISTRICT COURT
IN THE WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **KENDRICK BENNETT and COURTLANDE COLLINS individually and on behalf of all others similarly situated** | § § § § § | **CIVIL ACTION NO:**_____ |
| *Plaintiffs* | § § | |
| **VERSUS** | § § | |
| **MCDERMOTT INTERNATIONAL, INC., CHICAGO BRIDGE & IRON, CO., CHIYODA INTERNATIONAL, CORPORATION, and CAMERON LNG, LLC** | § § § § § § | **JURY DEMAND HEREIN** |
| *Defendants* | § § § § | |

---

**PLAINTIFFS' FIRST COMPLAINT
CLASS ACTION AND COLLECTIVE ACTION**

---

**NOW INTO COURT**, through undersigned counsel, come Plaintiffs, **KENDRICK BENNETT** and **COURTLANDE COLLINS**, on behalf of themselves and all other individuals similarly situated, who file this Class and Collective Action Complaint against Defendants, **MCDERMOTT INTERNATIONAL, INC., CHICAGO BRIDGE & IRON, CO., CHIYODA INTERNATIONAL CORPORATION,** and **CAMERON LNG, LLC**. Plaintiffs hereby aver as follows:

*{Remainder of Page Intentionally Left Blank}*

1

## NATURE OF ACTION

1. This Complaint is brought to obtain injunctive and monetary relief on behalf of individual employees, to whom Defendants have failed to pay regular and overtime wages for hours worked at Defendants' Cameron LNG Liquefaction Project in Hackberry, Louisiana. Plaintiffs allege violations of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and the Louisiana Wage Payment Act, La. R.S. §§ 23:631 *et seq.* The collective provisions of the FLSA provide for opt-in participation. Claims under the LWPA are proposed as an opt-out class claim under Rule 23 of the Federal Rules of Civil Procedure.

2. Defendants are in the business of providing engineering, procurement, construction and installation services for petrochemical, refining, gasification and gas processing technologies. At all times relevant to this Complaint, Defendants employed individuals to perform work at the Cameron LNG Liquefaction Project site, located in Hackberry, Louisiana.

3. Defendants require Plaintiffs and all others similarly situated to arrive to and depart from the job site via a ***mandatory*** transportation system implemented and controlled by the Defendants. Upon information and belief, Defendants are involved in at least one contract with language indicating that use of a mandatory employee transportation system is an essential term and/or a condition giving rise to the execution of such contracts. Thus, upon information and belief, absent the express agreement of Defendants to implement and maintain a mandatory transportation system, Defendants would not have been granted or

otherwise obtained the authorization, certificates, and/or other contracts to perform work on the Cameron LNG Liquefaction Project.[1]

4.   Upon information and belief, it is required that Defendants, along with their respective subcontractors, abide by and otherwise utilize a mandatory employee transportation plan.

5.   Plaintiffs and all others similarly situated are required by Defendants to arrive at one of the various designated bus sites and ride a bus to work prior to clocking in or badging in. Plaintiffs and all others similarly situated are required by Defendants to clock out or badge out before waiting in line to ride a bus back to one of the various bus sites, and prior to their individual commutes home.

6.   The method of travel articulated in Paragraph 5, and re-articulated in Plaintiffs' Complaint, is not ordinary home-to-work travel, nor is it a normal incident of employment.

7.   Plaintiffs and all others similarly situated bring forth this Class and Collective Action to recover unpaid wages for hours spent on Defendants' mandatory transportation system.

8.   Plaintiffs and all others similarly situated maintain that this Action is not covered by the Portal-to-Portal Act because, among other reasons, the form of transportation in dispute is ***required*** and/or rendered mandatory by the Defendants.

9.   Through its implementation of a mandatory transportation system and direct control over the number of buses and busing schedule, Defendants require Plaintiffs, and all those similarly situated, to report to the Defendant-designated bus sites at a particular hour. Upon arrival to their respective bus sites, Plaintiffs, and all those similarly situated, are willing and able to work; however, for reasons beyond their control, they are unable to perform work until some time has elapsed, namely the time between arrival at the bus site and the

---

[1] 147 FERC ¶ 61, 230 UNITED STATES OF AMERICA FEDERAL ENERGY REGULATORY COMMISSION; ORDER GRANTING AUTHORIZATION UNDER SECTION 3 OF THE NATURAL GAS ACT AND ISSUING CERTIFICATES.

buses' arrival at the job site. This wait time is not preliminary or postliminary activity; it is an integral part of Defendants' principal activities.

10. Certain unpaid wages subject to this Action are calculated at the Plaintiffs' and all others similarly situateds' regular rate of pay, while the other wages subject to this Action are calculated at an overtime rate of pay, dependent on the employee, schedule, and hours worked each week of his or her respective employment. Defendants prohibit Plaintiffs and all others similarly situated from submitting compensable time, worked as a result of being subject to Defendants' mandatory transportation system, to Defendants for payment. Time spent between arrival at the designated bus sites and the Cameron LNG job site should be deemed as compensable and, subsequently, considered in determining whether such time is subject to the employee's regular rate or overtime rate of pay.

11. The FLSA Collective Group consists of all individuals previously and currently employed by Defendants to provide various services at the individuals' assigned locations, which, upon information and belief, was primarily for the Cameron LNG Liquefaction Project.

12. The State Class consists of individuals previously employed by Defendants to provide various services at the individuals' assigned locations, which, upon information and belief, was primarily for the Cameron LNG Liquefaction Project.

13. This Action challenges Defendants' denial, through a willful practice and policy, to Plaintiffs and all others similarly situated of rights, obligations, privileges, and benefits owed to them as employees under the FLSA, including minimum wage and overtime pay. Plaintiffs also assert that Defendants violated the Louisiana Wage Payment Act ("LWPA"), La. R.S. §§ 23:631 *et seq.*, by failing to pay regular and overtime premium wages to all laborers upon termination of employment.

## PARTIES

14. Plaintiff, Kendrick Bennett, is a resident of Calcasieu Parish, Louisiana who works for the Defendant(s) at the Cameron LNG Liquefaction Project in Cameron Parish, Louisiana.  He performs work as a Welding Foreman. Plaintiff commenced work with Defendant(s) on or about December 16, 2016, and is currently employed by Defendant(s). Plaintiff Bennett has not received overtime premium pay, and possibly regular pay, for certain hours worked for Defendant(s).[2]

15. Plaintiff, Courtlande Collins, is a resident of Lake Charles, Louisiana who worked for the Defendant(s) at the Cameron LNG Liquefaction Project in Cameron Parish, Louisiana.  He performed work as a Pipefitter. Plaintiff commenced work with Defendant(s) on or about December 17, 2016 and concluded his employment on or about August 9, 2018. Plaintiff Collins has not received overtime premium pay, and possibly regular pay, for certain hours worked for Defendant(s).[3]

16. Plaintiffs Bennett and Collins bring this Action individually, and on behalf of all others similarly situated, as an opt-in collective action pursuant to 29 § U.S.C. 216(b). The members of the collective group include all individuals employed by Defendant(s) within the three (3) years prior to the filing of this Complaint, who were non-exempt employees and who worked in excess of forty (40) hours per week without receiving overtime compensation of at least one and one half times their regular hourly wage, who were wrongfully denied pay for compensable hours of work.

---

[2] Plaintiff Bennett represents all others similarly situated as it related to the allegations in Counts I and II.
[3] Plaintiff Collins represents all others similarly situated as it relates to the allegations in Counts I, II, and III.

17. Plaintiffs Bennett and Collins bring this Action individually, and on behalf of all others similarly situated, as an opt-out class under Rule 23 of the Federal Rules of Procedure, on behalf of a class employed by, and subsequently resigned or discharged from, employment with Defendant(s) at any time within the three (3) years prior to the filing of this Complaint, who have not been compensated all amounts due under the terms of their employment pursuant to La. R.S. § 23:631 *et seq*.

18. Defendant, **MCDERMOTT INTERNATIONAL, INC.** ("**MCDERMOTT**"), is a foreign corporation licensed to conduct and conducting business in the State of Louisiana. At all relevant times, upon information and belief, Plaintiffs and all others similarly situated were employed by Defendant.

19. Defendant, **CHICAGO BRIDGE & IRON, CO.** ("**CB&I**") is a foreign corporation licensed to conduct and conducting business in the State of Louisiana. At certain times relevant to this Action, **CB&I** was an acting employer of Plaintiffs and all others similarly situated. Currently, upon information and belief, **CB&I** and **MCDERMOTT** are engaged in acquisition proceedings.

20. Defendant, **CHIYODA INTERNATIONAL, CORPORATION** ("**CHIYODA**"), is a foreign corporation licensed to conduct and conducting business in the State of Louisiana. At all relevant times, upon information and belief, Plaintiffs and all others similarly situated were employed by Defendant **CHIYODA**.

21. Defendant, **CAMERON LNG, LLC** ("**CAMERON LNG**") facilitates "CCJV," a joint venture between Defendant **MCDERMOTT** and Defendant **CHIYODA**. CCJV is the engineering, procurement, and construction (EPC) contractor for the Cameron LNG Liquefaction Project.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States.

23. This Court may exercise supplemental jurisdiction over the state law claims set forth in this Complaint pursuant to 28 U.S.C. § 1367(a). The federal and state claims involve substantially the same facts and allege the same wrongs, namely the intentional wrongful nonpayment of regular wages and overtime premiums to Plaintiffs and all others similarly situated.

24. Upon information and belief, the Class and/or Collective Group has between five hundred (500) and ten thousand (10,000) members, and the amount in controversy, in the aggregate, is still being determined.

25. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(c) because a substantial part of the events giving rise to the claim occurred in the Western District of Louisiana, specifically in Calcasieu Parish and/or Cameron Parish, making the Lake Charles division the most appropriate Division for this suit.

26. Plaintiffs bring this action on behalf of themselves, a Federal Collective Group, and a State Class, as hereinafter defined.

*{Remainder of Page Intentionally Left Blank}*

## COLLECTIVE ACTION ALLEGATIONS

27. Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

28. Plaintiffs bring Counts I and II of this Complaint as a collective action, alleging violations of the FLSA on behalf of themselves and all similarly situated individuals. This "Federal Collective Group" is defined as:

> all individuals who, through a contract with Defendant(s) or otherwise, performed work for Defendant(s), and who have not received full compensation of the minimum wage and overtime premiums (collectively "Covered Personnel") anywhere at any time in the United States within the three (3) years preceding the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join this action pursuant to 29 U.S.C §216(b).

29. The "Federal Collective Group" includes the Plaintiffs named in this action. Plaintiffs reserve the right to modify this definition prior to conditional certification of the collective group.

30. Plaintiffs, as well as other employees and members of the Federal Collective Group, are similarly situated in that they had substantially similar job requirements, pay provisions, and were subject to Defendants' common practice, policy, or plan of controlling their daily job functions. Most notably, all individuals are required to report to the Cameron LNG Liquefaction Project site, located at or near 301 Main St, Hackberry, LA 70645, for work via the Defendants' mandatory transportation system. Defendants' mandatory transportation system *requires* all employees to ride buses to and from various bus sites and the job site, with the trips spanning anywhere from twenty (20) minutes to one (1) hour one way.

31. Defendants permitted, and at various times, required and encouraged, Plaintiffs and members of the Federal Collective Group to work more than forty (40) hours per week.

32. In addition, Plaintiffs and other members of the Federal Collective Group work more than forty (40) hours per week due to their use of the mandatory transportation system imposed by Defendants.

33. Upon information and belief, Defendants possess both actual and/or constructive knowledge that Plaintiffs and all similarly situated individuals have not been paid for compensable time at either their regular wage or overtime wage rates of pay.

34. Defendants have therefore operated under a scheme to deprive Plaintiffs and all others similarly situated of regular rate and overtime compensation by failing to properly compensate them for all time worked, including, but not limited, to time spent utilizing the Defendants' mandatory transportation system.

35. Defendants' conduct, as set forth in this Complaint, was willful and has caused significant damages to Plaintiffs and all similarly situated individuals.

36. Counts I and II of this Complaint, alleging violations of the FLSA, may be brought as an "opt-in" collective action pursuant to 29 U.S.C. §216(b) because the Plaintiffs' claims are similar to the claims of other Covered Personnel who worked for Defendants.

37. Plaintiffs and Federal Collective Group members are together victims of the single decision, policy, and/or plan of Defendants' mandatory transportation system.

38. Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and all other similarly situated individuals, and notice of this lawsuit should be sent to all similarly situated individuals. Those similarly situated individuals are known to Defendants and are readily identifiable through Defendants' personnel and employment records.

## CLASS ACTION ALLEGATIONS

39. Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

40. Plaintiffs bring Count III of this Complaint as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the State Class or "The Class" as defined as follows:

> all individuals who, through a contract with Defendant or otherwise, performed work, or were associated with such, for Defendant, and who have not received full compensation of the minimum wage and overtime premiums (collectively "Covered Personnel") at the conclusion of their employment with Defendant, anywhere at any time in the United States within the three (3) years preceding the commencement of the applicable prescriptive period under the Louisiana Wage Payment Act through the close of the Court-determined opt-out period.

Plaintiffs are included in the Class and reserve the right to redefine the Class prior to Class certification.

41. Plaintiffs and members of the Class are together victims of the single decision, policy, and/or plan of Defendants' mandatory transportation system.

42. Numerosity: Members of the Class are so numerous that their individual joinder is impracticable. At this time, approximately fifteen (15) individuals have retained undersigned counsel to represent them in this matter and over five hundred (500) individuals have attempted to contact undersigned counsel but have not yet signed engagement letters. The precise number of Class members is unknown to Plaintiffs; however, upon information and belief, it is in excess of ten thousand (10,000) individuals. The true number of Class members is, however, likely to be known by Defendants, and thus, Class members should be notified of the pendency of this action by first class mail, electronic, and published notice.

43. Commonality: There are numerous questions of law and fact common to Plaintiffs and the Class. Those questions predominate over any questions that may affect individual Class members, and include the following:

    a.  Whether Defendants have violated the rights of Plaintiffs and members of the class under the FLSA by intentionally refusing to compensate them for the regular hours they worked pursuant to 29 U.S.C. § 206;

    b.  Whether Defendants have violated the rights of Plaintiffs and members of the Class under the FLSA by intentionally refusing to compensate them for the overtime hours they worked pursuant to 29 U.S.C. § 207;

    c.  Whether Defendants have violated the rights of Plaintiffs and members of the Class under the Louisiana Wage Payment Act by intentionally refusing to compensate them for the hours they worked, including regular work hours and overtime hours;

    d.  Whether the Defendants have been unjustly enriched at the expense of Plaintiffs and members of the Class.

44. Typicality: Plaintiffs' claims are typical of the other members of the Class. Plaintiffs did not receive full payment of the wages and overtime premiums they are owed pursuant to the work provided during their employment with Defendants. Plaintiffs had the same place of employment, and same requirements placed upon them as all other Class members. Further, they were subject to the same policies and practices and the same or substantially similar conditions of employment.

45. Adequacy: The named Plaintiffs will adequately represent the interests of the Class. They have been treated in the same manner as other Class members by Defendants and have been damaged by this treatment in the same manner as other Class members by their loss of regular wages and overtime premium wages. Plaintiffs are committed to vigorously

prosecuting this Action. Plaintiffs have retained an attorney who is well qualified to handle lawsuits of this type. Plaintiffs have no interests adverse to those of the class.

46. Predominance: This case should be certified as a class action because the common questions of law and fact concerning Defendants' liability predominates over any individual questions, such as the days worked, the relative dates of termination, and the resulting amount of damages incurred by each employee.

47. Superiority: A class action is the only realistic method available for the fair and efficient adjudication of the claims of the State Class. The expense and burden of individual litigation makes it impracticable for members of the Class to seek redress individually for the wrongful conduct alleged in this Complaint. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship for the litigants and the Court and would create the risk of inconsistent rulings, which would be contrary to the interest of justice and equity. Litigating these claims in a single action will streamline discovery and avoid needless repetition of evidence at trial.

## FACTUAL ALLEGATIONS

48. Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

49. Defendants are foreign companies registered to do and conducting business within the State of Louisiana, whose businesses consist of engineering, procurement, construction and installation services and provision petrochemical, refining, gasification and gas processing technologies. At all times relevant to this suit, Defendants operated multiple projects, including, but not limited to, the Cameron LNG Liquefaction Project located at or near 301 Main St, Hackberry, LA 70645.

50. Upon information and belief, Defendants, in a joint venture, were awarded a contract by Cameron LNG to construct the Cameron Liquefaction Project in Hackberry, Louisiana. The scope of work includes engineering, procurement and construction for the addition of natural gas liquefaction and export facilities to the existing LNG regasification facility.

51. Upon information and belief, Defendants employed between five hundred (500) and ten thousand (10,000) individuals to perform work for the Cameron LNG Liquefaction Project. Upon information and belief, this particular project preparation commenced in or about 2014, with a publicized project start date in or about November 2018.

52. Upon information and belief, Defendants employed various other companies, herein referred to as "subcontractors," to complete certain services and projects for the Cameron LNG Liquefaction Project.

53. Such subcontractors include, but are not limited to: Performance Contractors, Universal Plant Services, Inc., Sun Industrial Group, LLC, Excel Contractors, Inc., TRIAD Electric and Controls, Apache Industrial Services, and Insulations, Inc.

54. Upon information and belief, at all material times, Defendants act as joint employers and/or control the job site as to both one another and the numerous subcontractors. Plaintiffs and all other employees similarly situated performed work which simultaneously benefitted two or more employers pursuant to the FLSA, 29 C.F.R. 791.1 *et seq*., and the LWPA. Upon discovery of this matter, Plaintiffs intend to clarify the nature of this allegation such that the appropriate parties are named and characterized upon disclosure.

55. Employees were notified of and/or specifically hired for the Cameron LNG Liquefaction Project. Employees reside across Louisiana in cities, including but not limited to, Lake Charles, Hackberry, Sulphur, Westlake, Moss Bluff, and Iowa.

56. Upon information and belief, the rates of promised pay for the employees range anywhere from $15.00 to $60.00 per hour, and each worker is promised between $0.00 and $150.00 of per diem per day. The hourly rate and per diem amounts depend upon any given employee's position, qualifications, and other factors.

57. Plaintiff Bennett is currently employed by Defendant(s) as a Welding Foreman. As such, Plaintiff is not classified as an administrator, executive, or professional. His rate of pay is $41.50 per hour. His per diem rate is $96.00 per day. Plaintiff Bennett is paid both an hourly rate and a per diem rate. Plaintiff Bennett receives compensation directly from the Defendant(s).

58. Plaintiff Bennett's job duties do not qualify him as an administrator, executive, or professional.

59. Plaintiff Collins was previously employed by Defendant(s) as a Pipefitter. As such, Plaintiff was not classified as an administrator, executive, or professional. His rate of pay was $30.00 per hour. His per diem rate was $96.00 per day. Plaintiff Collins was to be paid both an hourly rate and a per diem rate. Plaintiff Collins received compensation directly from Defendant(s).

60. Plaintiff Collins' job duties do not qualify Plaintiff Collins as an administrator, executive, or professional.

61. As an economic reality, Plaintiffs and all others similarly situated are dependent upon and controlled by Defendants, and are not in business for themselves. The work performed by Plaintiffs is an integral part of Defendants' business. Plaintiffs do not exercise any meaningful control over the work performed.

62. The relationship between Plaintiffs (and all similarly situated individuals) and Defendants is essentially the same in all material respects. Regardless of position title, upon

14

information and belief, Plaintiffs and all others similarly situated were hired as employees, were promised between $15.00 and $60.00 per hour of work, and were promised per diem pay of between $0.00 and $150.00 to perform various functions surrounding the Defendants' contract(s) for work at the Cameron LNG job site.

63. Plaintiffs and all others similarly situated are required to strictly follow Defendants' instructions and adhere to policies and procedures negotiated between Defendants and Cameron LNG.

64. Plaintiffs and all others similarly situated are directed by Defendants and are *required* to arrive and depart from the Cameron LNG job site via Defendants' mandatory transportation system. Buses arrive at multiple bus sites, designated by Defendants, to pick up employees for transport to the job site. By the nature of the bus schedules organized exclusively by Defendants, employees must arrive at the bus sites from their respective residences at a time early enough: (1) to find available parking at any of the given bus sites; (2) to guarantee themselves a seat on the bus; and (3) to account for the commute from the bus site to the job site.

65. Defendants fail to provide enough buses through their mandatory transportation system to allow Plaintiffs and all others similarly situated to be transported from their given bus stops. Upon information and belief, if Plaintiffs and all others similarly situated do not arrive several hours early to a given bus stop, they are forced to commute to yet another bus stop in order to then be transported to the job site by a later bus and thus, run the risk of reduced pay due to arriving at the job site late.

66. Plaintiffs and all others similarly situated are engaged to spend an extensive amount of wait time when they are required to arrive early enough to the bus sites to ensure their seat on the bus so as to not be reduced paid time upon arrival to the job site or be forced to travel

to various bus stops. Plaintiffs and all others similarly situated are engaged to wait by Defendant(s) and the wait time predominantly benefits the Defendants.

67. Furthermore, upon information and belief, Plaintiffs and all others similarly situated are disciplined for any failure to arrive at the bus sites at a time that allows timely arrival to the job site. Plaintiffs and all other similarly situated are disciplined in the form of reduced pay, prohibition to work, and absenteeism related warnings/write-ups.

68. Dependent on the bus site, trips to and from the Cameron LNG job site range anywhere from twenty (20) minutes to one (1) hour.[4] During this time, Plaintiffs and all others similarly situated are not compensated.

69. The time spent on the buses is not insubstantial or insignificant and, therefore, is not subject to the *de minimis* reduction.

70. Upon information and belief, Plaintiffs and all others similarly situated are subject to discipline by Defendants if their behavior, while on the bus, does not conform with Defendants' policies.

71. Upon information and belief, Plaintiffs and all others similarly situated are turned away from the job site and not permitted to work on days that, for whatever reason, they miss or do not otherwise utilize Defendants' mandatory transportation system.

72. Upon information and belief, buses commonly run behind schedule and thus force Plaintiffs and all others similarly situated to arrive to the job site late by no fault of their own. In such cases, Plaintiffs and all others similarly situated have hourly pay reduced, verbal and/or written warnings concerning timeliness, and other reprimands for arriving to the job site late.

---

[4] These trips often can last several hours dependent on traffic, speed of bus travel, and route selected by the Defendants. Often, if not all, trips could be completed in shorter periods of time by personal, private vehicles, rather than large commercial vehicles such as the buses utilized by Defendants.

73. Upon information and belief, employees are, at times, required to accept work calls and/or discuss job duties for that particular day while on the buses.

74. Plaintiffs and all others similarly situated have not been able or otherwise permitted to "badge-in" or clock-in prior to arriving at the Cameron LNG plant site. As such, no employee has been compensated for the time they that they are forced to wait for and travel to the Cameron LNG site via Defendants' mandatory transportation system.

75. Upon information and belief, Defendants have exercised complete control and authority over the buses and mandatory transportation. Upon information and belief, Defendants pay the bus drivers and/or any third party that employs the bus drivers.

76. Upon information and belief, Defendants have paid for personal injuries sustained in accidents in which said buses have been involved.

77. Upon information and belief, Defendants direct the route, scheduling, and other planning surrounding the mandatory busing system.

78. Upon information and belief, Defendants' use of the mandatory transportation system is for far more than simple commuting logistics. Rather, use of the mandatory transportation system directly affects Defendants' principal activities. Upon information and belief, Defendants' ability to perform work at the Cameron LNG Liquefaction Project is contingent upon the Defendants' implementation and control of a mandatory transportation system to mitigate traffic concerns raised by regulatory agencies, including, but not limited to, the Department of Transportation.

79. The time spent waiting for and riding on the buses, predominantly and primarily is for the benefit of the Defendants. Limitations to Plaintiffs' and all others similarly situateds' freedom exist while waiting for and riding on the buses as plead herein.

80. Defendants limit the personal freedom of Plaintiffs and all others similarly situated via the mandatory transportation system. Plaintiffs and all others similarly situated are not free to engage in recreational or personal activities, including, but not limited to, running errands, watching TV, playing games and/or cards, sleeping, and exercising.

81. At the end of Plaintiffs' and all others similarly situateds' shifts, employees are required to wait in prolonged lines in order to board the buses and endure the same mandatory bus ride back to their respective bus sites.

82. Notably, many employees live closer to the Cameron LNG plant location than the offered bus sites and, therefore, must travel further away from the job site on the way to work and further away from their residences on the way home from work, in order to comply with Defendants mandatory transportation system.

83. Plaintiffs and all others similarly situated, at no time, have been allowed to report to or depart from the job site by any other vehicle or method. At no point in time was extensive travel a contemplated normal occurrence at the time of Plaintiffs' and all others similarly situateds' hire.

84. The mandatory transportation system subjects Plaintiffs and all others similarly situated to several layers of commutes; (1) from their homes to the designated bus stops, and (2) from the bus stops to the Cameron LNG job site. Thus, Defendants have effectively forced Plaintiffs and all others similarly situated to double commute times and waste otherwise available working time. Time spent on the mandatory buses from the bus site to job site and from the job site to the bus stop, as well as associated wait time, is compensable.[5]

---

[5] Plaintiffs acknowledge and do not dispute that home to bus site commute time is not compensable.

85. The activities of Plaintiffs and all others similarly situated, and their participation in Defendants' mandatory transportation system, is integral and indispensable to the Defendants.

86. Plaintiff Bennett worked, on average, a total of sixty (60) hours per week over the course of his years of employment with Defendants, exclusive of the hours spent being transported via Defendants' mandatory transportation system. As such, all wages yet to be paid to Plaintiff Bennett are at a premium overtime rate.

87. Plaintiff Collins worked, on average, a total of sixty (60) hours per week over the course of his years of employment with Defendant(s), exclusive of the hours spent being transported via Defendant(s)'s mandatory transportation system. As such, all wages yet to be paid to Plaintiff Collins are at a premium overtime rate.

88. At the end of each work day, and prior to waiting in line and/or boarding the buses to be transported back to the designated bus sites, Plaintiffs and all others similarly situated are required to "badge-out" or clock-out, such that they are not compensated to wait for the buses to depart the site and transport them to their respective bus sites.

89. As a result of the extended times waiting for the buses to pick up employees, depart the job site, and arrive at the designated and respective bus sites, Plaintiffs and/or others similarly situated incurred costs in various forms, including, but not limited to, additional daycare fees and associated expenses. Plaintiffs and/or others similarly situated frequently missed their children's and/or relative's recreational and/or social events due to Defendants' mandatory transportation system.

90. At all relevant times, Plaintiffs and all others similarly situated properly filled out and signed the required timesheets.

**COUNT I:**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**UNPAID MINIMUM WAGES**
*Pursuant to 29 U.S.C. § 203 et seq.*

91. Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

92. Plaintiffs are non-exempt employees of Defendants within the meaning of the FLSA.

93. Defendants, at all material times, are employers within the meaning of the FLSA engaging in interstate commerce.

94. Pursuant to 29 U.S.C. §206(a)(1), every employer shall pay its employees who in any workweek is engaged in commerce or production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce wages at the required rates.

95. There are no exemptions applicable to Plaintiffs or to other members of the Federal Collective Group.

96. For purposes of the FLSA, the employment practices of Defendants were and are uniform in all respects material to the claims asserted in this Complaint throughout the portions of the United States in which Defendants conduct business.

97. Plaintiffs and other members of the Federal Collective Group did not receive minimum wage for hours worked; namely the hours spent on the mandatory transportation system.

98. Defendants prohibit Plaintiffs and other members of the Federal Collective Group from submitting compensable time to Defendants for those hours worked as a function of using Defendant's mandatory transportation system. Time spent utilizing Defendants' mandatory transportation system should be deemed compensable, and that time should be considered in determining whether each individual employee shall be compensated at their regular wage rate or overtime rate.

20

99. Upon information and belief, at all relevant times, Defendants had gross operating revenues in excess of $500,000.00.

100. In committing the wrongful acts alleged to be in violation of the FLSA, Defendants acted willfully in that it knowingly, deliberately, and intentionally failed to pay minimum wages to Plaintiffs and other members of the Federal Collective Group.

101. As a result of Defendants' willful failure to pay minimum wages, Plaintiffs and the other members of the Federal Collective Group were damaged in an amount to be proved at trial.

102. Plaintiffs and other members of the Federal Collective Group were not paid minimum wages by the Defendants for any and all time spent utilizing the mandatory transportation system.

103. Defendants' violation of the FLSA was willful and intentional.

104. Therefore, Plaintiffs demand that they and other members of the Federal Collective Group be paid at least minimum compensation as required by the FLSA for every hour worked in any work week for which they were not compensated, plus interest, liquidated damages, and attorney's fees as provided by law.

---

**COUNT II:**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**UNPAID OVERTIME WAGES**
*Pursuant to 29 U.S.C. § 203 et seq.*

---

105. Plaintiffs incorporate and restate each of the above paragraphs as if fully set forth herein.

106. Plaintiffs were non-exempt employees of Defendants within the meaning of the FLSA engaging in interstate commerce.

107. As a result of Defendants' mandatory transportation system, Plaintiffs' compensable time worked exceeds forty (40) hours per week. For those weeks, Plaintiffs are entitled to overtime pay at a rate of 1.5 times their regular rates of pay pursuant to the Act.

108. Section 207(a)(1) of the FLSA provides in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

109. There are no exemptions applicable to Plaintiffs or to other members of the Federal Collective Group.

110. For purposes of the FLSA, the employment practices of Defendants were and are uniform in all respects material to the claims asserted in this Complaint throughout the portions of the United States in which Defendants conduct business.

111. Plaintiffs and other members of the Federal Collective Group regularly worked more than forty (40) hours per week, but did not receive overtime pay.

112. Defendants prohibit Plaintiffs and members of the Federal Collective Group from submitting compensable time to Defendants. Time spent utilizing Defendants' mandatory transportation system should be deemed as such, and further determined whether each individual employee shall be compensated at their regular wage rate, or overtime rate.

113. Upon information and belief, at all relevant times, Defendants had gross operating revenues in excess of $500,000.00.

114. In committing the wrongful acts alleged to be in violation of the FLSA, Defendants acted willfully in that they knowingly, deliberately, and intentionally failed to pay overtime premium wages to Plaintiff and other members of the Federal Collective Group.

115. As a result of Defendants' willful failure to pay overtime premium wages, Plaintiffs and the other members of the Federal Collective Group were damaged in an amount to be proven at trial.

116. Therefore, Plaintiffs demand that they, and other members of the Federal Collective Group, be paid overtime compensation as required by the FLSA for every hour of overtime worked in any work week for which they were not compensated, plus interest, damages, penalties, and attorney's fees as provided by law.

---

**COUNT III:**
**VIOLATION OF THE LOUISIANA WAGE PAYMENT ACT**
*Pursuant to La. R.S. §§23:631 et seq.*

---

117. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein. The forthcoming Paragraphs apply only to similarly situated individuals that have resigned, been terminated, discharged, or have otherwise separated from the Defendants' employ.

118. It is unlawful under Louisiana law for an employer to require or permit an employee to work without paying compensation for all hours he or she works.

119. It is unlawful under Louisiana law for an employer to require or permit a non-exempt employee to work in excess of forty (40) hours per week without paying overtime. *Kidder v. Statewide Transp., Inc.*, 2013-594 (La. App. 3 Cir. 12/18/13), 129 So. 3d 875.

120. Pursuant to La. R.S. §§ 23:631(A)(1)(a)-(b), upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of the discharge or resignation, whichever occurs first.

121. Defendants, through its policies and practices described above, willfully violated La. R.S. §23:631 throughout the Class Period, and continuing through present, as follows:

    a. By failing to pay Plaintiff and other members of the Class their earned wages for all hours worked, including those spent waiting for the designated buses to arrive and to transport them to the job site;

    b. By failing to pay Plaintiff and other members of the Class their earned wages for all hours worked, including those spent waiting for the designated buses to arrive at the job site and to transport them back to their designated bus sites;

    c. By failing to pay Plaintiff and other members of the Class overtime pay for hours exceeding forty (40) due to mandatory use of the buses;

    d. By failing to make, keep, and preserve accurate time records with respect to the Plaintiffs and other members of the Class sufficient to determine their wages and hours for use of the mandatory transportation system; and

    e. By other practices to be fully uncovered upon trial of this matter.

122. Upon information and belief, Plaintiff and/or other Class members have made demand for payment to Defendants.

123. Defendants' actions, described above, constitute a continuing willful violation of La. R.S. § 23:631.

124. As set forth above, Plaintiff and other members of the State Class have sustained losses in compensation as a proximate result of Defendants' violation of Louisiana law. Accordingly, Plaintiff, on behalf of himself and the State Class members, seek damages in the amount of their unpaid earned compensation, penalties in accordance with La. R.S. §23:632, and reasonable attorney's fees taxed as costs to be paid by the Defendants.

---

**PRAYER**

---

**WHEREFORE**, Plaintiffs request that this Honorable Court enter judgment against Defendants, providing the following relief:

a)  An Order certifying the Federal Collective Group and the State Class, appointing Plaintiffs as Class Representatives, and appointing the undersigned counsel of record as the Collective and Class Counsel;

b)  An Order declaring the Defendants' conduct as willful, not in good faith, and not based on reasonable grounds;

c)  An Order requiring Defendants to compensate Plaintiffs and the other members of the Class and Federal Collective Group for the reasonable value of the benefits Plaintiffs provided to Defendants;

d)  Reimbursement of unpaid regular wages and overtime wages for all uncompensated hours of work as described in this Complaint;

e)  Payment of any penalties or other amounts under any applicable laws, statutes or regulations, including, but not limited to liquidated damages and penalty wages;

f)  Judgment in favor of each Class and Collective member for damages suffered as a result of the conduct alleged herein, to include pre-judgment interest and post-judgment interest;

g)  Award Plaintiffs reasonable attorneys' fees and costs;

h)  Award Plaintiffs and the other members of the Class and Collective punitive damages in an amount to be determined at trial; and

i)  Grant such further legal and equitable relief as this Court deems just and necessary.

---

## DEMAND FOR JURY TRIAL

---

Pursuant to Rule 28 of the Federal Rules of Civil Procedure, the Plaintiffs demand trial by jury in this action of all issues so triable.

Dated: February 7, 2019

**Respectfully Submitted,**

**SUDDUTH AND ASSOCIATES, LLC**
Attorneys at Law
1109 Pithon St.
Lake Charles, Louisiana 70601
Telephone: (337) 480-0101
Fax: (337) 419-0507

BY: *James C. Sudduth, AAA*
**JAMES E. SUDDUTH, III (#35340)**
Email: James@saa.legal
**ERIN N. ABRAMS (#38119)**
Email: Erin@saa.legal
**KOURTNEY L. KECH (#37745)**
Email: Kourtney@saa.legal
*Counsel for Kendrick Bennett, Courtlande Collins, and all others similarly situated*