# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAKE CHARLES DIVISION

| | |
|---|---|
| **KENDRICK BENNETT, ET AL** | **CASE NO. 2:19-CV-00158** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **MCDERMOTT INTERNATIONAL INC., ET AL.** | **MAGISTRATE JUDGE KAY** |

## MEMORANDUM RULING

Before the court are three Motions to Dismiss filed under Federal Rule of Civil Procedure 12(b)(6) by, respectively, defendants Cameron LNG, LLC ("Cameron LNG") [doc. 17], Chiyoda International Corporation ("Chiyoda") [doc. 19], and CB&I, LLC ("CB&I"), McDermott International Inc. ("McDermott"), and Chiyoda [doc. 25], as well as a Supplemental Motion to Dismiss [doc. 69] filed by CB&I, Chiyoda, and McDermott. Plaintiffs oppose all motions.

## I.
### BACKGROUND

These motions relate to a suit filed by plaintiffs Kendrick Bennett and Courtlande Collins, on behalf of themselves and others similarly situated, against the above-named defendants. Plaintiffs assert that they work/worked for defendants at the Cameron LNG Liquefaction Project in Hackberry, Louisiana, and are required to ride on employer-provided buses between designated parking lots and the job site. Doc. 15. They claim that they are entitled to compensation for time spent on this commute. Accordingly, they seek monetary and injunctive relief under the Louisiana Wage Payment Act ("LWPA"),

Louisiana Revised Statute § 23:631 *et seq.*, and the minimum wage and overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq. Id.* They also seek certification as a collective/class action under the FLSA and Federal Rule of Civil Procedure 23. *Id.*; docs. 30, 62.

The defendants now move for dismissal of the plaintiffs' claims. Cameron LNG and Chiyoda argue that the claims against them must be dismissed because they are not the plaintiffs' employers. Doc. 17, att. 1; doc. 19, att. 1. Chiyoda also argues that plaintiffs' FLSA minimum wage claims are mathematically impossible and that plaintiff Bennett's LWPA claim must be dismissed because he is still employed. Doc. 19, att. 1. CB&I, McDermott, and Chiyoda assert that plaintiffs' minimum wage claims are mathematically impossible, that their FLSA claims are implausible under the Portal-to-Portal Act, and that their claims are insufficiently pled in that they improperly "lump" defendants together. Doc. 25, att. 1; doc. 42. Finally, CB&I, Chiyoda, and McDermott assert that plaintiffs' LWPA claims are preempted by the FLSA. Doc. 69.

## II.
### MOTION TO DISMISS STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider matters of which it may take judicial notice, including matters of public record. *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished) (citing *Lovelace v. Software Spectrum Inc.*,

78 F.3d 1015, 1017–18 (5th Cir. 1996) and *Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007)).

Such motions are also reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success, but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

### III.
### APPLICATION

#### A. *Employer Status*

Both the LWPA and the minimum wage and overtime provisions of the FLSA obligate employers to pay certain wages owed to their employees. La. Rev. Stat. § 23:631; 29 U.S.C. §§ 206–07. Accordingly, a plaintiff must allege that he was employed by the defendant during the relevant time period in order to state a claim under either statute. *Johnson v. Heckmann Water Resources, Inc.*, 758 F.3d 627, 630 (5th Cir. 2014); *Bergeron v. Ochsner Health Sys.*, 2017 WL 3648451, at *3 (E.D. La. Aug. 24, 2017).

Louisiana courts use a five-factor test to evaluate whether an employer/employee relationship exists under the LWPA, with a focus on the employer's right to exercise

-3-

control over the employee's performance. *Mendoza v. Essential Quality Constr., Inc.*, 691 F.Supp.2d 680, 686 (E.D. La. 2010). Meanwhile, the FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). To this end the court uses an economic reality test, balancing four factors. *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012).

Bennett and Collins asset that they "worked for the Defendant(s) at the Cameron LNG Liquefaction Project," with Bennett working as a welding foreman from December 2016 until the present and Collins working as a pipefitter from December 2016 until August 2018. Doc. 15, ¶¶ 14–15. Chiyoda and Cameron LNG move for dismissal of all claims due to plaintiffs' failure to plausibly plead enough facts to establish an employment relationship with either defendant.

The plaintiffs offer no allegations as to their employment status or relation to the defendants other than to assert defendants' role in the liquefaction project and label them as employers. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient even at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As district courts have noted, however, "[t]he contention that a particular defendant is an employer 'is the very definition of a factual allegation upon which plaintiffs are entitled to offer proof." *Rodriguez v. Gold & Silver Buyers, Inc.*, 2013 WL 5372529, at *3 (S.D. Tex. Sep. 24, 2013) (quoting *Moreno v. EDCare Mgmt., Inc.*, 243 F.R.D. 258, 260 (W.D. Tex. 2007)); *see, e.g., Mejia v. Bros. Petrol., LLC*, 2015 WL 3619894, at *3–*4 (E.D. La. Jun. 9, 2015) (cursory allegation of employer status sufficient under FLSA claim); *Bodnar v. Newport Corp. of La.*, 2011 WL 4575122, at *4–*5 (E.D.

La. Sep. 29, 2011) (same, under the LWPA). Accordingly, plaintiffs' allegations of employment status suffice to support their FLSA and LWPA claims.

## B. *State Law Claims*

### 1. *Bennett's LWPA claim*

Chiyoda asserts that Bennett's LWPA claim must be dismissed because he admits that he is still employed. The LWPA "creates liability for an employer who fails to timely pay wages owed to an employee after the employee voluntarily leaves employment." *Becht v. Morgan Bldg. & Spas, Inc.*, 843 So.2d 1109, 1111–12 (La. 2003). Accordingly, a plaintiff must show that his employment with the defendant has ended in order to prevail on such a claim. *E.g., Bergeron*, supra, 2017 WL 3648451 at *3. Bennett alleges that he "is currently employed by Defendant(s)," but as plaintiffs note, only purports to represent other claimants as to the FLSA claims. Doc. 15, ¶ 14 & n. 2. Collins, on the other hand, asserts that he "concluded his employment" in August 2018 and purports to represent others similarly situated on both the FLSA and LWPA claims. *Id.* at ¶ 15 & n. 3. Accordingly, Bennett does not assert a LWPA claim and the motion to dismiss must be denied on this basis.

### 2. *Preemption of LWPA claims*

Defendants contend that plaintiffs' LWPA claim is preempted by their claims for unpaid minimum wage and overtime pay under the FLSA. The FLSA preempts state law and penalties for employees engaged in interstate commerce on claims of legal entitlement to compensation. *Bell v. Associated Wholesale Grocers, Inc.*, 2019 WL 1979935, at *1 (E.D. La. 2019) (citing *Divine v. Levy*, 36 F.Supp. 55, 58 (W.D. La. 1940)). Where the

FLSA applies, the LWPA cannot be used to pursue a claim of legal entitlement to wages. *England v. Adm'rs of the Tulane Educ. Fund*, 2016 WL 6520146, at *6 (E.D. La. Nov. 3, 2016). The LWPA, however, creates liability for failure to pay wages "then due under the terms of employment" upon an employee's discharge. La. Rev. Stat. § 23:631. Claims based on non-payment of agreed-upon wages may therefore be maintained under the LWPA's broad scope and are not preempted by the FLSA. *E.g., Tillman v. La. Children's Med. Ctr.*, 2017 WL 1399619, at *3 (E.D. La. Apr. 19, 2017).

Plaintiffs have alleged that they were non-exempt employees within the meaning of the FLSA and that they were engaged in interstate commerce. Doc. 15, ¶ 106. Accordingly, they maintain that they are legally entitled to compensation for their hours spent commuting under the FLSA's minimum wage and overtime payment provisions. They insist that their LWPA claim, on the other hand, is based on nonpayment of agreed-upon wages. Doc. 92. They allege, in relevant part, that defendants have violated the LWPA by failing to pay "earned wages for all hours worked," specifically those spent riding on and waiting for the employers' buses, within the required time. Doc. 15, ¶ 121. They do not, however, show or allege any agreement to pay for this time.

As defendants note, claims for agreed-upon wages under the LWPA require a demonstration that the time is compensable under some agreement, internal policy, or procedure. *See, e.g., England*, 2016 WL 6520146, at *6 (allowing LWPA claim for agreed-upon wages to proceed alongside FLSA overtime claim, because the claim was for benefits, including paid time off, specifically designated under employer's internal policies); *see also Nassauer v. Marine Offshore Catering Co.*, 413 So.2d 946, 948 (La. Ct. App. 1st Cir.

1982) (finding that employees were entitled to wages for hours spent traveling to and from rig based on evidence that it was "normal procedure" for company to compensate for this time). Plaintiffs do not point to any agreement or other entitlement to travel/wait time compensability, other than the basis set forth under their FLSA claim. This omission is fatal to their ability to show that the state law claims are not preempted, given their admission that their legal entitlement claims are covered by the FLSA. Accordingly, the LWPA claim and Rule 23 class allegations raised thereunder must be dismissed with prejudice.

### C. Implausibility of FLSA Claims under Portal-to-Portal Act

Plaintiffs claim that defendants violate the minimum wage and overtime provisions of the FLSA by refusing to pay them for time spent on the mandatory transportation system as well as for wait time relating to that transportation. Doc. 15. Defendants argue that the plaintiffs' FLSA claims are barred by the Portal-to-Portal Act, 29 U.S.C. § 254. Doc. 25, att. 1.

### 1. Compensability of travel to and from work

The Portal-to-Portal Act was enacted to limit employers' liability under the FLSA, and exempts from compensation:

> (1)     walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform; and
> (2)     activities which are preliminary to or postliminary to said principal activity or activities.

29 U.S.C. § 254(a). Defendants assert that time spent on the bus is exempted as travel to and from work by the plain language of § 254(a)(1). Plaintiffs maintain that the time is

compensable "because, among other reasons, the form of transportation in dispute is *required* and/or rendered mandatory by the Defendants." Doc. 15, ¶ 8 (emphasis in original); *see* doc. 44, pp. 20–45.

In *Vega v. Gasper*, 36 F.3d 417 (5th Cir. 1994), the Fifth Circuit held that farm laborers' travel time to and from fields, on transport provided by the employer, was ordinary to- and from-work travel and therefore not compensable under § 254(a)(1). *Id.* at 424–25. To this end it noted that (1) the workers performed no work during or before the bus rides; (2) the workers' use of the bus was voluntary; (3) the workers' mere receipt of instructions from a supervisor during this time was insufficient to render the time compensable; (4) the length of travel time in itself did not render the time compensable; and (5) the workers did not have to travel between job sites on these buses. *Id.* at 425; *see also Johnson v. RGIS Inventory Specialists*, 554 F.Supp.2d 693 (E.D. Tex. 2007) (finding that travel time in a company van was non-compensable based on many of the same factors). The court later considered a mandatory transportation scheme in *Griffin v. S & B Engineers & Constructors, Ltd.*, 507 F. App'x 377 (5th Cir. 2013) (unpublished), and likewise found that the time was non-compensable under § 254(a)(1).

Plaintiffs argue that the court should disregard *Griffin*'s unpublished analysis and instead focus on the limited consideration of voluntariness under *Vega* and *Johnson*. To this end they also point to *Morrillion v. Royal Packing Co.*, 995 P.2d 139 (2000), in which the California Supreme Court, focusing only on the compulsory nature of the system, held that employees were entitled to compensation under California wage laws for time spent on employer-mandated transit. Plaintiffs contend that *Morrillion* is persuasive because

-8-

"California's law is nearly analogous to the FLSA – in fact a derivative of the FLSA – and [it] involves a case where a forced busing system was in place." Doc. 44, p. 42. There, however, the court noted that the FLSA "differs substantially from the state scheme" and declined to consider any federal case law. 995 P.2d at 147. In particular, the state labor code and wage orders at issue "do not contain an express exemption for travel time similar to that of the Portal-to-Portal Act" and the court "decline[d] to import any federal standard, which expressly eliminates substantial protections to employees, by implication." *Id.* at 148, 152.

The analysis in *Griffin*, on the other hand, is highly persuasive. There the Fifth Circuit considered a mandatory transportation scheme in which the employer provided buses that took employees to and from the plant from a parking lot six or seven miles away, in round trips totaling forty to sixty minutes a day. 507 F. App'x at 378–79. While on the buses, employees were required to obey employer's rules of conduct and subject to disciplinary action, including termination, if they violated them. *Id.*

As the *Griffin* court observed, no circuit has found that time spent on mandatory transportation schemes was *per se* compensable under the FLSA. Circuits to consider the issue have regarded the factor skeptically. *See Bonilla v. Baker Concrete Constr. Inc.*, 487 F.3d 1340, 1343 (11th Cir. 2007) ("The fact that the workers were required to ride authorized transportation . . . is not relevant to the outcome of this case because even mandatory travel time is exempted from compensation under the Portal to Portal Act."); *Smith v. Aztec Well Svcg. Co.*, 462 F.3d 1274, 1288 (10th Cir. 2006) ("[N]othing in the [Portal-to-Portal Act] indicates that there is a *per se* exception for employees just because

they must travel with their coworkers.") Though the voluntariness of the transportation scheme was mentioned in both *Vega* and *Johnson*, it was not dispositive in either. Finally, the *Griffin* court noted that the mandatory busing system was well within the scope of the following Department of Labor interpretative statement:

> Examples of walking, riding, or traveling which may be performed outside the workday and would normally be considered "preliminary" or "postliminary" activities are . . . (2) riding buses between a town and an outlying mine or factory where the employee is employed; and (3) riding on buses or trains from a logging camp to a particular site at which the logging operations are actually conducted.

*Id.* at 383 (quoting 29 C.F.R. § 790.7(f)).[1] Accordingly, the court applied the other factors mentioned in *Vega* and, concluding that the limitations on travel were not "integral and indispensable" to the plaintiff's work, held that the time was non-compensable under § 254(a)(1). *Id.* at 382–83.

Plaintiffs in this matter allege that the transportation system "is not ordinary home-to-work travel, nor is it a normal incident of employment." Doc. 15, ¶ 6. To this end they claim that they are required to travel on employer-provided buses between designated parking areas and the job site in Hackberry, Louisiana, "with the trips spanning anywhere from twenty (20) minutes to one (1) hour one way." *Id.* at ¶ 30. They maintain that the

---

[1] Plaintiffs argue that their travel is within the scope of § 790.7(c). That section states, in relevant part:
> [W]here an employee travels outside his regular working hours at the direction and on the business of his employer, the travel would not ordinarily be "walking, riding, or traveling" of the type referred to in section 4(a). One example would be a traveling employee whose duties require him to travel from town to town outside his regular working hours; another would be an employee who has gone home after completing his day's work but is subsequently called out at night to travel a substantial distance and perform an emergency job for one of his employer's customers.

29 C.F.R. § 790.7(c). Plaintiffs' allegations do not show that they are "on the business" of their employer during the travel time, and the transportation scheme at issue bears no resemblance to the examples offered. Instead, it fits squarely within the parameters of § 790.7(f) above.

system is inconvenient because it adds time to the commute for many employees and because they cannot spend that time engaging in their choice of recreational or personal activities. *Id.* at ¶¶ 79–84. They contend that unspecified employees were "at times required" to accept work calls and discuss job duties while on the buses. *Id.* at ¶ 73. Finally, they allege that the system has numerous benefits for the employer, including assuring its compliance with government regulations. *Id.* at ¶ 78. They admit, however, that they do not perform any work between arrival at the designated parking area and drop-off at the job site. *Id.* at ¶ 9.

It is not the importance of the transportation scheme to defendants, or even its inconvenience to plaintiffs, that matters here. Instead, "[a] restriction imposed on the manner in which plaintiffs can travel to and from their workplace is relevant only if it shows that their travel time was integral and indispensable to their principal activities." *Griffin*, 507 F. App'x at 383 (quoting *Smith v. Aztec Well Svcg. Co.*, 462 F.3d 1274, 1288 (10th Cir. 2006)).[2] As the Supreme Court held shortly after *Griffin*, a court errs under the "integral and indispensable" test when it focuses on whether the employer required the activity or received a benefit from it. *Integrity Staffing Solutions, Inc. v. Busk*, __ U.S. __, 135 S.Ct. 513, 519 (2014). Instead, the inquiry is "tied to the productive work that the employee is *employed to perform*." *Id.* (emphasis in original). The Fifth Circuit has recognized *Busk* as abrogating *Vega*, which lends even greater weight to *Griffin*'s analysis

---

[2] Defendants argue that the "integral and indispensable" test is not applicable to this case because plaintiffs' travel time is excluded by the plain language of § 254(a)(1). Doc. 53, p. 12. As *Griffin* shows above, however, this test is necessary to resolving the extent to which the employer's control of the transportation might render it a compensable activity.

and the de-emphasizing of convenience and compulsoriness as factors. *See Bridges v. Empire Scaffold, LLC*, 875 F.3d 222, 227–28 (5th Cir. 2017).

Plaintiffs raise numerous allegations relating to the benefits of the transportation system to the employer(s) and its inconveniences to the employees, but do not assert that the transportation had any connection to their own productive work.[3] Their reliance on the concerns raised in a California case, which distinguished itself from relevant federal law, is scarcely creditable. Meanwhile, all relevant federal authority shows that a mandatory transportation scheme – even one that benefits the employer – does not make the employees' commute compensable under the exclusions imposed by the plain language of the Portal-to-Portal Act, absent considerations not even alleged here. Related guidance from the Department of Labor likewise shows that schemes like the one at issue, where workers are transported en masse to and from remote work sites, are precisely among the types of commutes contemplated under the Act's exclusions.

Plaintiffs observe that *Griffin* and related cases were decided on motions for summary judgment. They argue that dismissal is "exceptionally premature" at this point due to their limited opportunity to engage in discovery. However, they fail to present any allegations that would distinguish the scheme at issue here from the one considered there in any relevant capacity. While they allege greater wait times, discussed below, they have not shown that these wait times have any connection to the productive work that the plaintiffs were employed to perform. Additionally, their allegations that some employees

---

[3] Their chief allegation of restriction or inconvenience appears to be that they are required to meet at designated parking locations before boarding the buses, but the busing examples contained in the Department of Labor guidance above do not appear limited to instances in which the employees would be picked up directly from their homes.

– rather than any plaintiff yet identified in this suit – occasionally took work calls are insufficient to show that anything connected to the plaintiffs' principal activities was done during this commute, especially in light of their admission that no work was done until they reached the job site. Accordingly, defendants succeed in showing that the FLSA claims, as they relate to travel time, are barred under the Portal-to-Portal Act.

### 2. *Compensability of wait time*

Plaintiffs also allege that defendants have not provided enough buses to support this scheme and that they are required to arrive at their parking areas "several hours early" in order to be guaranteed a seat at their chosen stop and a timely arrival at work. Doc. 15, ¶¶ 65–66. They maintain that they are also entitled to compensation for the pre-shift wait time. Doc. 44, pp. 45–50.

Plaintiffs rely on case law examining the compensability of wait time based on "whether the time is spent [predominantly] for the employer's benefit or for the employee's." *Preston v. Settle Down Enterprises, Inc.*, 90 F.Supp.2d 1267, 1278–79 (N.D. Ga. 2000) (internal quotations omitted). As the Supreme Court made clear in *Busk*, supra, however, the test for compensability is not whether the activity is done for the employer's benefit or whether the employer requires the activity. 135 S.Ct. at 519. Instead, the correct test is whether the activity is integral and indispensable to the employee's principal activities. *Id.* Under this test the Fifth Circuit recently held that employees who arrived at their job site early due to a limited number of shuttle buses were not entitled to compensation for their wait time, because they were not required to begin their principal activities (erecting and dismantling scaffolding) until their shifts began. *Bridges*, 875 F.3d

at 226–28. Here plaintiffs have admitted that they do not do any work until arriving at the job site, and their claim that unspecified employees occasionally took calls while riding the bus is not enough to show that their time spent waiting for the bus was integral and indispensable to any of their principal activities. Under the binding precedent set by *Bridges* and *Busk*, they cannot state a claim for compensable wait time.

Defendants have demonstrated plaintiffs' inability to recover under the FLSA and the court need not consider the other arguments raised relating to the impossibility of plaintiffs' minimum wage claims or the degree to which the allegations impermissibly lump defendants together. Plaintiffs' federal claims and the collective action allegations raised thereunder must be dismissed.

### D. Request for Leave to Amend

Finally, plaintiffs seek leave to amend their petition if it is found deficient in any manner. Doc. 44, pp. 51–52. They also protest that they have been unable to conduct discovery due to defendants' "incessant" motions to dismiss. *Id.* at 39. Plaintiffs have chosen to sue multiple entities as employer, however, and are not entitled to complain when each entity brings its own motion to dismiss.

While Rule 15(a) requires the district court to grant leave to amend freely, "[l]eave to amend is in no way automatic." *Marucci Sports, LLC v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014). The court has the discretion to deny leave based on a variety of factors, including undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Id.*

Plaintiffs assert that any pleading deficiency "is amenable to correction upon amendment," but do not actually show how they would respond to the numerous legal deficiencies above. Instead, they have persisted on supporting their claims with cases invalidated by recent Supreme Court precedent and by reliance on a self-distinguishing state court case. This court has devoted significant time to considering the motions to dismiss, while defendants have also dedicated time and resources to pointing out the flaws in plaintiffs' causes of action. Accordingly, the request for leave to amend is denied and does not serve as a barrier to dismissal of the suit.

## IV.
### CONCLUSION

For the reasons stated above, the Motion to Dismiss [doc. 17] filed by Cameron LNG will be denied and the Motion to Dismiss [doc. 19] filed by Chiyoda will be denied in part and denied as moot in part. The Motion to Dismiss [doc. 25] filed by defendants CB&I, McDermott, and Chiyoda will be granted in part and denied as moot in part and the Motion to Dismiss [doc. 69] filed by those parties will be granted, resulting in the dismissal with prejudice of all claims in this matter. The Motion for Sanctions [doc. 64] filed by CB&I will remain pending before the court.

THUS DONE in Chambers on this ___15___ day of ___August___, 2019.


_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**